# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

BARRY LYNN MILLER, )
                                Plaintiff, )
                                  v. )                 Case No. CIV-12-440-SPS
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
                                Defendant. )

## OPINION AND ORDER

The claimant Barry Lynn Miller requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 6, 1960, and was fifty years old at the time of the administrative hearing (Tr. 35, 159). He completed high school, attended college and earned three associate's degrees, and has worked as an electronics technician and janitor (Tr. 22, 42-43). The claimant alleges he has been unable to work since March 1, 2001, due to knee, shoulder and wrist pain, anxiety attacks and high blood pressure (Tr. 197).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on May 22, 2009. His applications were denied. ALJ Edward L. Thompson held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 1, 2011. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ further found that the claimant could: never climb a ladder, rope, or scaffold; frequently climb ramps/stairs, balance,

stoop, kneel, crouch, and crawl; never perform overhead reaching with the right upper extremity; perform simple and some complex tasks; relate to others on a superficial work basis; and adapt to a work situation (Tr. 21). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, parking lot cashier, laundry folder, and assembler of small parts (Tr. 23).

**Review**

The claimant argues that the ALJ erred: (i) by failing to evaluate the opinion of his therapist, Ms. Evelyn Souther, and (ii) by failing to find that his mental impairments met a listing. The Court finds that the ALJ *did fail* to properly evaluate the opinion of the claimant's therapist (as well as third party evidence from the claimant's mother, which supported the opinion), and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of hypertension, right shoulder arthritis and impingement, an affective disorder, and an anxiety-related disorder (Tr. 18). As to mental impairments, the claimant was hospitalized several times in 2005 for chest pain that was determined to be caused by anxiety attacks (Tr. 310-12, 490, 501-03, 509-511, 525). Because his date last insured was September 30, 2006, two reports on the claimant's mental impairments were prepared. One found the evidence inconclusive prior to the date last insured (Tr. 471-483), but the others indicated that from May 22, 2009 through October 2009, the claimant had only a non-severe mental impairment that caused only mild functional limitations and no episodes of decompensation (Tr. 392-

418). On July 25, 2009, Tracie Carney examined the claimant for physical impairments as well as his history of anxiety attacks, and noted he was scheduled to see a psychiatric evaluator in a few days (Tr. 381-383). In August 2009, Beth Jeffries diagnosed panic disorder without agoraphobia, as well as chronic pain. Her prognosis for the claimant stated, "It is likely his symptoms of anxiety are creating disturbances in his social and occupational life. . . . It is recommended that he seek counseling . . . to assist him with his anxiety. His symptoms of anxiety are likely moderate to severe. Should he not receive counseling I think his symptoms are unlikely to change on their own" (Tr. 389-390).

On November 17, 2009, the claimant went to Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSSO) and was diagnosed with generalized anxiety disorder, major depressive disorder of single episode and moderate, and assigned a Global Assessment of Functioning (GAF) score of 52. The intake assessment was signed by M. Rowell, a licensed professional counselor with a master's degree in rehabilitation counseling (Tr. 430-439). The following month, the claimant was assessed with a GAF of 48 by Ms. Evelyn Southers, who is licensed in clinical mental health (Tr. 443, 450). Her notes recorded the claimant's own reports related to his history of anxiety and depression, as well as a lifetime of little social interaction, and her interpretive summary stated that there:

> has been an increase in symptoms of irritability, anxiety, sleeplessness, depression, and an overwhelming fear of not accomplishing anything in his life. He experiences these symptoms on a daily basis even though some days are better than others. Unfortunately due to his symptoms he has extreme difficulty in maintaining social function. He has severe and constant deficiencies of concentration, persistence of pace which results in

> a failure to complete even simple daily living tasks. Barry also has trust
> issues which had led to a deterioration of adaptive behaviors.

(Tr. 443-444). Additionally, she noted that the claimant "has very poor social skills which reflect in his withdrawing of social situations" (Tr. 583). In January 2010, the claimant reported better sleep, and no suicidal thoughts (Tr. 451).

On February 9, 2010, state agency physician Dr. Carolyn Goodrich completed a Psychiatric Review Technique (PRT) form indicating that the claimant currently had mild restrictions of activities of daily living, but moderate restrictions in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 457-469). Dr. Goodrich also indicated that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, but indicated that he was not otherwise significantly limited, even in areas of sustained concentration and persistence (Tr. 485-487).

In June 2010, the claimant's regular treatment records from MHSSO indicate that he had a GAF of 50, with the same assessment of his mental impairments and abilities (Tr. 559-561). Ms. Southers' case management notes indicated that the claimant "continues to exhibit a significant impairment in his ability to function within the community due to clinical symptoms of depression and anxiety," and she also noted that he has a tendency to become so nervous he shakes (Tr. 582). On January 5, 2011, Ms. Southers completed a Mental Impairment Questionnaire for the claimant, identifying his signs and symptoms as including poor memory, sleep disturbance, mood disturbance,

emotional liability, recurrent panic attacks, anhedonia or pervasive loss of interests, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, and generalized persistent anxiety (Tr. 620). She described him as compliant and motivated to change, but that his treatment and response had been inconsistent and his impairments were expected to last for more than a year (Tr. 621). When asked about working a job on a sustained basis, she stated that the claimant could not because "severe anxiety limits [his] ability to take direction. He tends to have paranoia which is exacerbated by" work-related demands (Tr. 622). Ms. Southers indicated that the claimant had marked restrictions on activities of daily living and related to concentration, persistence, or pace, and extreme limitations in maintaining social functioning, as well as repeated episodes of decompensation (Tr. 622).

The claimant's mother Barbara Miller prepared a Third Party Function Report and testified at his administrative hearing (Tr. 64-70, 204-211). She indicated the claimant had lived with her all of his life, except while he was in college (Tr. 65), and that he had always been quiet and reserved, which worsened over the years and developed into anxiety and depression following the death of his father in 1991 (Tr. 66). Ms. Miller testified the claimant was electronically inclined and could do things that did not require a lot of concentration, but would express concern about ruining things if he had to do them in a work setting (Tr. 67). She noted that the claimant was on medications and in counseling, but stated that the only real improvement she had seen was with his blood pressure getting under control (Tr. 68-69). She described the claimant's anxiety attacks as having been so bad in 2005 that she had to take him to the hospital three times that

year, and she had done so again recently in 2011 (Tr. 69).  Ms. Miller also testified that the claimant "shakes all the time," which was a manifestation of his anxiety (Tr. 70).

In her Third Party Function Report, Ms. Miller described both the claimant's physical and mental impairments.  She indicated that he does not like to be in crowds and does not often go places, and that he does not handle stress or changes in routine well and has to take medication as a result (Tr. 208, 210).

The claimant testified at the administrative hearing that he lived with his mother most of his life and believed (but could not remember for sure) that he had been receiving mental health treatment for approximately four years (Tr. 40).  He described his anxiety attacks as feeling like he was having a heart attack, but he did not know what caused them to happen.  His most recent panic attack had been about four months previous to the hearing (Tr. 43).  The claimant testified that he thought he could be do electronics tech again, except that he could not mentally keep the job due to problems concentrating and remembering (Tr. 44).  He stated that in addition to concentration and memory problems, he struggles being around other people in a social setting, and no longer socializes with anyone but is able to go grocery shopping with his mother (Tr. 45-46).  In response to further questioning from the ALJ, the claimant testified that he could go to the grocery store by himself, as long as he is only there for approximately ten minutes, and that much longer would cause him to have a panic attack because he is around other people he does not know (Tr. 60, 62-63).

In his written opinion, the ALJ indicated he was giving great weight to the opinion of reviewing physician Dr. Goodrich because he found it "well supported by the evidence

of record and it is not inconsistent with the record when viewed in its entirety" (Tr. 19-20). The ALJ did not, however, give much weight to the "other source" evidence in the case, *i. e.*, the opinions expressed by counselor Ms. Souther or the testimony and Third Party Function Report of the claimant' mother. The ALJ gave the former "very little weight" because Ms. Souther was "not an acceptable medical source. She is a social worker, not a psychiatrist, psychologist, or licensed mental health professional" (Tr. 20). The ALJ wholly ignored the evidence from Ms. Miller.

Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. Southers herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1. *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting

factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ made no reference whatever to these factors in connection with the evaluations by Ms. Southers, and it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). Nor did the ALJ otherwise discuss Ms. Southers' opinion, opting instead to simply reject it in favor of an opinion by a state agency physician who neither examined nor treated the claimant. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Social Security Ruling 06-03p also provides the standards for evaluation of third party evidence such as that provided by the claimant's mother Ms. Miller. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, not only did the ALJ wholly fail to apply these standards to the evidence provided by Ms. Miller; the ALJ simply ignored it entirely in his written opinion. Because this evidence provided at least some support for the observations made by Ms. Souther, the ALJ should have given it proper consideration instead of ignoring it.

Because the ALJ failed to properly consider the "other source" evidence provided by Ms. Southers and the claimant's mother Mr. Miller, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma